UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILITA H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-04063-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 21, 33 |

Plaintiff seeks Social Security benefits for a combination of physical and mental impairments, including post-traumatic stress disorder (PTSD), inability to focus, stress, anxiety, depression and chronic pain. (Administrative Record ("AR") 182-192, 206-11, 337.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 21, 33.) As explained below, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further proceedings because there are outstanding issues to be resolved before a disability determination can be made.

**BACKGROUND**

**I. Procedural History**

Plaintiff applied for supplemental security income (SSI) and disability insurance benefits (DIB) under Titles XVI and II of the Social Security Act in July 2017. (AR 13, 296-309.) Plaintiff alleged a disability onset date of February 19, 2016 due to post-traumatic stress disorder (PTSD), inability to focus, stress, anxiety, depression and chronic pain. (AR 182-192, 206-11, 337.) Her applications were denied initially and upon reconsideration. (AR 167-182, 192, 197, 206.) An Administrative Law Judge (ALJ) held a hearing on January 8, 2020 and August 4, 2020. (AR 32-123.)

On September 29, 2020, the ALJ issued a decision denying Plaintiff's application for disability (AR 13-26).

The ALJ initially determined that Plaintiff met the requirements for DIB insurance benefits through June 30, 2019. (AR 15.) At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity in 2018 and thus continued with the disability analysis after that date. (AR 15-16.) At step two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder, depression, PTSD, and somatic symptom disorder. (AR 16.) At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (AR 17.) The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels, with the following non-exertional limitations: able to understand, remember, and perform simple, routine tasks and make simple work-related decisions; work in a stable environment with few changes if any during the day-to-day work setting; need to work in a setting that does not require more than occasional interaction with the public; can do low stress work, defined as simple, routine work in an environment free of fast paced production requirements; capable of superficial interaction with supervisors and coworkers. (AR 19.) At steps four and five, the ALJ found that Plaintiff could not perform past relevant work, but that there were other jobs in the national economy that Plaintiff could perform, including janitor, kitchen helper, auto detailer. (AR 25.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1, 7.) Plaintiff then sought review in this court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 21, 33.)

**II. Issues for Review[1]**

1. Whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony?

2. Whether the ALJ erred in evaluating the medical evidence?

3. Whether the ALJ failed to consider Plaintiff's limitations in combination?

4. Whether the ALJ erred in determining Plaintiff's severe impairments?

---

[1] Plaintiff does not appear to challenge the ALJ's findings with respect to her physical impairment (chronic pain), just her mental impairments.

5. Whether the ALJ erred in determining that Plaintiff did not meet or equal a listing?

6. Whether the ALJ erred in determining Plaintiff's RFC?

7. Whether to remand for an award of benefits or further proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

**DISCUSSION**

**I.     Subjective Symptom Testimony**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the

3

claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) This statement is followed by a summary of Plaintiff's history of mental health care and then a summary of the various medical opinion testimony. (AR 20-24.)

First, the ALJ's boilerplate conclusory rationale fails to satisfy the requirement that an ALJ provide "specific, clear, and convincing reasons" supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. *Trevizo*, 871 F.3d at 678 (finding that the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding the ALJ erred in failing to "specifically identify any such inconsistencies" and instead stating "her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination."). To ensure meaningful review, the ALJ must provide "specific reasons" "so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494. That is, the ALJ must "link that testimony to the particular parts of the record supporting her non-credibility determination." *Id*. The ALJ's failure to do so here is grounds for remand.

Second, to the extent that the ALJ's summary of Plaintiff's history of mental health care is meant to show that Plaintiff's symptoms periodically show improvement, the ALJ must consider this improvement in context. While the effectiveness of treatment is a relevant factor an ALJ may consider when evaluating subjective symptom testimony, *see* 20 C.F.R. §§ 404.1529(c)(3)(iv–v),

416.929(c)(3)(iv–v), "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Rather, reports of improvement in the mental health context "must be interpreted with an understanding of the patient's overall well-being and the nature of h[is] symptoms." *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]tatements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Further, the objective medical evidence reflects that the ALJ improperly cherry-picked evidence that supported her conclusion while ignoring medical evidence that contradicted her conclusion. *See Cotton v. Astrue*, 374 Fed. App'x. 769, 773 (9th Cir. 2010) (holding that an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding"); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."). The ALJ seized upon one report of Plaintiff participating well in a group therapy session, while ignoring that Plaintiff often had difficulty interacting with others. (*See, e.g.*, AR 518, 616, 632, 638, 648.)

Likewise, to the extent that the ALJ faults Plaintiff for not consistently seeking mental health care, this too is not a specific reason supported by clear and convincing evidence for rejecting her subjective symptom testimony. While an ALJ "is permitted to consider lack of treatment in his credibility determination[,]" *Burch*, 400 F.3d at 681, an ALJ must also "consider and address reasons for not pursuing treatment that are pertinent to an individual's case[,]" SSR 16-3P. Here, Layla Uribe, a licensed marriage family therapist at Bay Area Community Services, where Plaintiff obtained case management services between June 2018-June 2019, submitted a letter noting that Plaintiff's "frustration tolerance" and her Major Depressive Disorder symptoms made it difficult for her "to have the desire or follow through to engage" in ongoing mental health treatment. (AR 653.) The ALJ did not consider this evidence as an explanation for Plaintiff's inconsistent mental health care. Nor did the

5

ALJ consider the testimony of Kim Ard-Elutio, the CEO and Cofounder of Grassroots Resource Connection, who has been an advocate and friend of Plaintiff's since 2014. (AR 72-79.) Among other things, Ms. Ard-Elutio testified that Plaintiff's reluctance to interact with others, lack of transportation, and depression have all prevented her from accessing medical care. (AR 77-79.) The ALJ's boilerplate conclusion that Plaintiff's symptom testimony was inconsistent with a lack of treatment does not consider either of these explanations for why Plaintiff did not consistently seek treatment for her mental health conditions during the relevant period. This is equally true with respect the ALJ's reliance on the absence of evidence of hospitalizations or medication treatment—the ALJ did not consider whether there were other explanations for the lack of evidence of hospitalizations or medication treatment. Further, a claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). While there is ample evidence of Plaintiff's homelessness in the record, there is no evidence that the ALJ explored or considered whether her homelessness affected her ability to seek and obtain mental health treatment.

Finally, although the ALJ referenced Plaintiff's activities of daily living, her ability to manage her own finances, and the fact that she worked at substantial gainful activity level in 2018, none of these are specific reasons supported by clear and convincing evidence. (AR 21.) The ALJ failed to identify which activities of daily living were inconsistent with her testimony, and the evidence cited states that Plaintiff can "perform light household chores, but with significant limitations." (AR 23 (citing AR 53).) The ALJ did not explain how Plaintiff's limited daily activities were inconsistent with her severe impairment or symptom statements. *Trevizo*, 871 F.3d at 676. Further, while Plaintiff was employed for four months during 2018, she testified she was terminated after only four months because of her interactions with the public and coworkers. (AR 51-52.) The ALJ's cherry-picked evidence about Plaintiff's activities does not provide a clear and convincing reason to reject her symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

**II.     Medical Evidence**

6

The Ninth Circuit has embraced the Commissioner's new regulatory framework for evaluating medical opinions for applications filed on or after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). The new framework eliminates a hierarchy of or deference to medical opinions, and instead uses factors to determine the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 789-792. The factors are: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (cleaned up).

The most important factors are supportability and consistency. *See Woods*, 32 F.4th at 791. "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up). The "relationship with the claimant" factor encompasses "the purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, . . . and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. The ALJ must explain how he considered supportability and consistency, may explain how he considered the relationship factors, and is not required to explain the other factors. *See id*.; *see also* 20 C.F.R. § 404.1520c(b)(2).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion"; rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions . . . and explain how it considered the supportability and consistency factors in reaching these findings.

*Id*. at 792 (cleaned up).

**A. Consultative Medical Examiner Opinions**

7

Both of the consultative medical examiners, Dr. Martin and Dr. Wiebe, found that Plaintiff had marked limitations in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition. (AR 546, 567.) Dr. Wiebe also found that Plaintiff was markedly limited in several other areas including maintaining attention, concentration, and performing at a consistent pace, getting along with others and behaving appropriately; and following detailed instructions. (AR 567.) The ALJ found their opinions only "partially persuasive." (AR 22-23.)

### 1. Dr. Martin

The ALJ found that Dr. Martin's opinion that Plaintiff had a moderate to marked limitation in handling stress and marked limitation in completing a workday was not supported by the record given her (1) activities of daily living; and (2) "the fact that she engaged in substantial gainful activity in the months after the consultative exam." (AR 23.) While the ALJ used the word "supported" it appears that she was actually addressing the consistency of Dr. Martin's opinion with respect to "evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). Regardless of which factor the ALJ was relying upon, the ALJ's finding is not supported by substantial evidence.

First, to the extent that the ALJ relied on Plaintiff's activities of daily living, the ALJ does not identify any particular activities of daily living that conflict with Dr. Martin's opinion. *See Trevizo*, 871 F.3d at 675-76 (finding that the ALJ erred in not making specific findings regarding how an activity of daily living (childcare) was inconsistent with a physician's opinion). Further, the portion of Dr. Martin's opinion discussing Plaintiff's activities of daily living—on which the ALJ relies—indicates that while Plaintiff reported "being independent for basic ADL's" she also reported "[p]roblems with memory and concentration" and that she is "able to perform light household chores, but with *significant* limitations." (AR 543 (emphasis added).) In addition, Dr. Martin noted that Plaintiff "has been homeless of the past three years." (*Id*.) While a conflict between a medical opinion and a claimant's activities of daily living, "may justify rejecting a treating provider's opinion…this principle has no application [where] a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities." *Ghanim*, 763 F.3d at 1162 (internal citations omitted).

8

Second, the ALJ's reliance on the fact that Plaintiff "engaged in substantial gainful activity in the months after the consultative exam," ignores that, as discussed above, Plaintiff testified she was terminated from that job after only four months because of issues interacting with the public and coworkers. (AR 23, 51-52.) Substantial evidence thus does not support the ALJ's reliance on this job—from which Plaintiff was terminated—as a basis for finding that Dr. Martin's opinion that Plaintiff had marked limitations in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition was not supported by the record.

### 2. Dr. Wiebe

The ALJ found that Dr. Wiebe's opinion was only partially persuasive because while there was "some support for finding that the claimant has severe impairment and marked limitations with respect to detailed tasks and concentration," "the claimant demonstrated greater cognitive ability at the psychiatric consultative exam and during other evaluations" and "the claimant has shown no more than moderate limitation in interacting with others as evidenced by" (1) her participation in group therapy, and (2) her "friendly, cooperative, open, and engaged demeanor/behavior on numerous occasions." (AR 23.)

First, to the extent that the ALJ is relying on Dr. Martin's psychiatric cognitive exam as a basis for finding that Plaintiff has "greater cognitive ability," this is not supported by Dr. Martin's findings. The results of the tests Dr. Martin administered indicated that Plaintiff had "weakness on measures of perceptual reasoning and processing speed" and "showed significant difficulty with sustained attention and mental tracking." (AR 545-546.) Further, Dr. Martin found that Plaintiff was moderately limited in her ability to maintain regular attendance and perform work activities on a consistent basis, markedly limited in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition, and moderately to markedly limited in her ability to deal with the unusual stresses of a competitive work environment. (AR 546.)

Nor is the ALJ's finding supported by the "other evaluations" the ALJ references. (AR 23 (citing 3F8, 5F25, 11F10).) While the chart notes from Plaintiff's June 27 and July 20, 2017 visits (3F8, 5F25) indicated that Plaintiff was "Normal" with respect to the categories of "Memory" and

"Psychiatric," those visits were with a nurse practitioner regarding her elevated blood pressure—not a mental health provider. (AR 478, 537.) During this same time period, Plaintiff had a mental health evaluation which concluded that she was "agitated," "anxious," "depressive," "impairment of erratic/inconsistent memory," and "impaired ability to make reasonable decisions." (AR 491 (6/27/17 visit notes).) Further, Plaintiff's August 8, 2017 psychiatric diagnostic evaluation, which is cited by the ALJ (11F25) indicates that "client exhibits difficulties in education/employment/day/social activities," that she is homeless, and that she "endorses isolation, insomnia, frequent crying 'for no apparent reason,' hopelessness, fear of 'being on the edge of insanity,' frustrated, confused, inability to focus mind, 'tired.' (with implied multiple meanings), anxiety, hypervigilance, and occasional panic attacks." (AR 602.) During that visit, Plaintiff was diagnosed with "major depressive disorder, Recurrent episode. Severe." (AR 606.) These evaluations do not support the ALJ's finding that Plaintiff had "greater cognitive ability."

Second, the record likewise does not support that "the claimant has shown no more than moderate limitation in interacting with others as evidenced by" (1) her participation in group therapy, and (2) her "friendly, cooperative, open, and engaged demeanor/behavior on numerous occasions." (AR 23.) While there are some notations to this effect in the record, there are numerous—often in the same treatment notes—notations which suggest that she is severely depressed, anxious, and that she is agitated when dealing with medical providers and front desk staff. (*See, e.g.*, AR 518, 616, 632, 638, 648.) An ALJ errs when she considers the claimant's evidence selectively and ignores evidence that contradicts his findings. *See Fanlo v. Berryhill*, No. 17-cv-01617, 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) (stating that the "ALJ cherry-picked [the claimant's] progress notes ... to support her conclusion that [the claimant] was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion," and explaining that ALJs are "not permitted to 'cherry-pick' only the records that support [their] position"); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding that the ALJ erred in selectively relying on entries in the medical record while "ignor[ing] the many others that indicated continued, severe impairment.").

With respect to consistency, the ALJ found that Dr. Wiebe's opinion regarding Plaintiff's

10

"marked limitations are not consistent with the claimant's activities of daily living, her ability to manage her own finances, and the fact that she worked at substantial gainful activity level in 2018." (AR 23.) As discussed above in the context of the ALJ's similar findings with respect to Dr. Martin, the ALJ's statements are not supported by substantial evidence.

In sum, the neither the ALJ's supportability nor consistency findings with respect to Dr. Wiebe's opinion are supported by substantial evidence.

### B. Non-Examining Medical Consultants

The ALJ found that the opinions of non-examining medical consultants Dr. Economoe and Dr. Constantine were persuasive because they were "consistent with the longitudinal record." (AR 22.) Plaintiff insists that the ALJ erred in so concluding because it ignores the evidence in the record from Dr. Martin and Dr. Wiebe finding that Plaintiff had marked limitations in several respects including her ability to complete a normal workweek, ability to get along with others, and ability to behave appropriately. The Court agrees. The ALJ erred in not considering the totality of the evidence, and in particular, the evidence which contradicted Dr. Economoe and Dr. Constantine's opinions. This is particularly true given that the contradictory opinions were offered by physicians who actually examined Plaintiff. "While the new regulations have abandoned the "controlling weight" rule, the treatment relationship with the claimant continues to be a factor that must be considered in determining the weight to be given medical opinions." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *16 (N.D. Cal. Mar. 30, 2020) (citing 20 C.F.R. § 404.1520c(c)(3)) (concluding that "[t]he ALJ's error was compounded by the fact that he gave "significant weight" to the opinions of state agency doctors who neither examined nor treated V.W.").

### C. Other Medical Source Opinions

The ALJ found that the statements submitted by Layla Uribe, licensed marriage family therapist at Bar Area Community Services, and Kim Ard-Elutilo, CEO and co-founder of Grassroots Resource Connection, discussed above, were not from "acceptable medical sources" and thus considered them as third-party reports. (AR 23.) Plaintiff raises a variety of claims of error with respect to this finding noting that Mr. Uribe and Ms. Ard-Elutilo's testimony provides "meaningful insight" into Plaintiff's claim and her difficulty accessing medical care. (Dkt. No. 21 at 18.) As

11

discussed above, the ALJ erred in not considering this evidence as an explanation for Plaintiff's inconsistent mental health care and shall do so on remand.

### III. Harmless Error

Because the ALJ's consideration of the medical evidence and subjective symptom testimony are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's step-two and step-three analysis and the RFC. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in evaluating the medical opinion evidence and rejecting Plaintiff's subjective symptom testimony, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's mental capacity to work. *Id.* at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment).

### IV. Remand

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, the record has not been fully developed because the ALJ did not consider all of the evidence presented by Plaintiff or her medical doctors and thus there are still facts to be decided. Therefore, remand for further proceedings is proper.

## CONCLUSION

The Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 21 and 33.

**IT IS SO ORDERED.**

Dated: September 13, 2022

JACQUELINE SCOTT CORLEY
United States District Judge